UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN JUAREZ,<br><br>    Petitioner,<br><br>    v.<br><br>SCOTT FRAUENHEIM, Warden,<br><br>    Respondent. | No. 1:17-cv-00246-JLT (HC)<br><br>**ORDER DIRECTING CLERK OF COURT TO ASSIGN DISTRICT JUDGE**<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[TWENTY-ONE DAY OBJECTION DEADLINE]** |

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation serving a sentence of 45 years-to-life for convictions of sexually abusing three girls. Petitioner has filed the instant habeas petition challenging his conviction. The Court finds that the state court rejections of his claims were not contrary to, or an unreasonable application of, Supreme Court precedent and recommends the petition be **DENIED.**

**I.    PROCEDURAL HISTORY**

In March 2014, Petitioner was convicted in the Kern County Superior Court of one count of continuous sexual abuse (Cal. Penal Code § 288.5(a)), and two counts of committing a lewd act upon a child (Cal. Penal Code § 288(a)). People v. Juarez, 2016 WL 1128492, at *1 (Cal. Ct. App. Mar. 22, 2016). Allegations were found true that each offense had been committed against multiple victims. Id. On April 2, 2014, Petitioner was sentenced him to a total indeterminate

1

prison term of 45 years-to-life. Id.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). Id. While the appeal was pending, Petitioner filed a habeas petition in the Kern County Superior Court. (Doc. 7-10 at 1.[1]) The superior court denied the petition in a reasoned decision on October 21, 2015. (Doc. 7-10 at 1.) On March 22, 2016, the Fifth DCA issued its opinion affirming the judgment. Juarez, 2016 WL 1128492, at *1. Petitioner filed a habeas petition in the California Supreme Court on September 15, 2016. (Doc. 7-11 at 1.) The petition was summarily denied on November 16, 2016. (Doc. 7-11 at 1.)

On February 21, 2017, Petitioner filed the instant petition for writ of habeas corpus in this Court. (Doc. 1.) Respondent filed an answer on April 4, 2017. (Doc. 8.) Petitioner filed a traverse to Respondent's answer on May 5, 2017. (Doc. 9.)

## II. FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision.[2]

> On June 24, 2013, defendant was charged with sexually abusing his wife's two granddaughters and grandniece between 2006 and 2011. Each girl was under the age of 13 at the time of the abuse. At trial, all three victims testified defendant approached them and engaged in inappropriate conduct with them while they were staying at his house, outside Delano, California. The first victim testified defendant touched her breasts and vagina on numerous occasions between 2007 and 2009, and would force her to touch his penis by forcefully manipulating her arm, while at the same time he touched her genitals. The second victim testified that on one occasion, in either 2010 or 2011, defendant touched her vagina and attempted to make her touch his penis, but she was able to run away. The third victim testified that in 2009 defendant approached her from behind and put his hands under her shirt and rubbed her breasts. In an instance of uncharged misconduct, the People presented the testimony of another teenage girl who testified that in 2009 defendant had approached her in his home and rubbed her inner thigh. There were no witnesses to these events.

Juarez, 2016 WL 1128492, at *1.

## III. DISCUSSION

A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody

---

[1] Documents are referenced using ECF pagination.
[2] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

2

pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.     Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable

application of federal law is different from an incorrect application of federal law.'" <u>Cullen v. Pinholster</u>, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." <u>Harrington</u>, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. <u>Davis v. Woodford</u>, 384 F.3d 628, 637 (9th Cir. 2003) (citing <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." <u>Jeffries</u>, 114 F.3d at 1500; <u>see</u> <u>Taylor v. Maddox</u>, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, <u>Maddox v. Taylor</u>, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See <u>Ylst v. Nunnemaker</u>, 501 U.S. 979, 803 (1991); <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993); <u>see also</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 119-120 (2007) (holding that the <u>Brecht</u> standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C. <u>Review of Petition</u>

The instant petition presents the following grounds for relief: 1) The state court's decision finding that the erroneous instruction to the jury under CALJIC No. 2.50.01 was harmless is objectively unreasonable; 2) There was insufficient evidence to support his convictions; and 3)

Ineffective assistance of counsel deprived Petitioner of his federal constitutional rights to due process and a fair trial.

### 1. Claim One – Instructional Error

Petitioner first claims the trial court erred by instructing the jury with CALJIC No. 2.50.01 because, he asserts, the instruction improperly allowed for currently charged offenses to be used as propensity evidence. He asserts that the alleged offenses were too dissimilar or remote to be used as propensity evidence and improperly lowered the state's burden of proof. He contends the state court's finding that the error was harmless was objectively unreasonable and requires reversal.

#### a. State Court Decision

Petitioner raised this claim on direct review. In the last reasoned decision, the Fifth DCA denied the claim as follows:

> At the conclusion of defendant's trial, the court instructed the jury with CALJIC No. 2.50.01 as follows:
>
>> "In determining whether defendant has been proved guilty of any sexual crime of which he is charged, you should consider all relevant evidence[,] including whether the defendant committed *any other sexual crimes*[,] *whether charged or uncharged*[,] about which evidence has been received. The crimes charged in Counts 1, 2, and/or 3, may be considered by you in that regard[.] [A]ny conduct made criminal by Penal Code [s]ection 647.6 [ (a) ](1). The elements of this crime are set forth elsewhere in these instructions.
>>
>> "If you find by a preponderance of the evidence that the defendant committed *any such other sexual offense*, you may[,] but are not required to [,] infer that the defendant had a disposition to commit sexual offenses. If you find the defendant had this disposition, you may[,] but are not required to [,] infer that he was likely to commit and did commit the crime or crimes of which he is accused. However, even though you find by *preponderance of the evidence* that the defendant committed *other sexual offenses*, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes you are determining.
>>
>> "If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider[,] along with all other evidence[,] in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crimes that you are determining. You must not consider this evidence for any other purpose." (Italics added.)
>
> …

5

Defendant contends that CALJIC No. 2.50.01 violates his right to due process since, in addition to permitting the jury to consider previously uncharged offenses as evidence of his propensity to commit currently charged offenses, it also allowed the jury to consider currently charged offenses as propensity to commit other currently charged offenses as well. The California Supreme Court rejected an identical argument in *People v. Villatoro* (2012) 54 Cal.4th 1152 (*Villatoro*), holding that other charged crimes could be used as propensity evidence. (*Id*. at pp. 1168–1169.)

Because this issue has been decided by our Supreme Court, we must reject defendant's argument. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

*II. The Charged Offenses Were Not Dissimilar, Remote, or Unconnected.*

Next, defendant argues that, even under *Villatoro*, the instruction was inappropriate, as the charged offenses were too dissimilar, remote, and unconnected to be probative for propensity purposes. We disagree.

In *Villatoro*, the court stated the following:

> "Though recognizing that evidence of the charged offenses may not be excludable under section 352, the Court of Appeal below concluded that nothing precludes a trial court from considering section 352 factors when deciding whether to permit the jury to infer a defendant's propensity based on this evidence. It explained: 'Even where a defendant is charged with multiple sex offenses, they may be dissimilar enough, or so remote or unconnected to each other, that the trial court could apply the criteria of section 352 and determine that it is not proper for the jury to consider one or more of the charged offenses as evidence that the defendant likely committed any of the other charged offenses.' We agree." (*Villatoro, supra*, 54 Cal.4th at p. 1163.)

Here, however, we do not find the charged offenses were dissimilar, remote, or unconnected. Defendant was charged with the sexual abuse of three young girls between 2007 and 2011. Each child was under the age of 13 at the time of the abuse, staying at defendant's house with other family members during school breaks, and each child's story included substantially similar descriptions of the sexual misconduct engaged in by defendant. Given the similarity, location and time-frame of the charged offenses, defendant's argument fails.

*III. The Jury Instructions Impermissibly Lowered the People's Burden of Proof.*

Defendant next contends that CALJIC No. 2.50.01, as given, impermissibly lowered the People's burden of proof on the use of charged offenses as propensity evidence. Specifically, it allowed the jury to establish the charged offenses for propensity purposes by a preponderance of the evidence, then use that propensity evidence to establish defendant's guilt. We agree.

It is well settled that prior uncharged instances of sexual offenses need only be established by a preponderance of the evidence to be used as propensity evidence. But the same cannot be said of currently charged offenses. *Villatoro* held that use of charged offenses as propensity evidence requires those charges be proved beyond a reasonable doubt. In *Villatoro*, the jury was instructed with the

6

following, modified version of CALCRIM No. 1191:

> "'The People presented evidence that the defendant committed the crime of rape as alleged in counts 2, 4, 7, 9, 12 and 15 and the crime of sodomy as alleged in count 14. These crimes are defined for you in the instructions for these crimes. [¶] If you decide that the defendant committed one of these charged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit the other charged crimes of rape or sodomy, and based on that decision also conclude that the defendant was likely to and did commit the other offenses of rape and sodomy charged. If you conclude that the defendant committed a charged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove the defendant is guilty of another charged offense. *The People must still prove each element of every charge beyond a reasonable doubt and prove it beyond a reasonable doubt before you may consider one charge as proof of another charge.*'" (*Villatoro, supra*, 54 Cal.4th at p. 1167, italics added.)

This instruction does not mention the preponderance of evidence standard.

On appeal, the defendant in *Villatoro* argued that instruction "failed to designate clearly what standard of proof applied to the charged offenses before the jury could draw a propensity inference from them." (*Villatoro, supra*, 54 Cal.4th at p. 1167.) The Court rejected the argument, holding the following:

> "Unlike the standard pattern instruction CALCRIM No. 1191, which refers to the use of uncharged offenses, *the modified instruction did not provide that the charged offenses used to prove propensity must be proven by a preponderance of the evidence. Instead, the instruction clearly told the jury that all offenses must be proven beyond a reasonable doubt, even those used to draw an inference of propensity*. Thus, there was no risk the jury would apply an impermissibly low standard of proof. [Citation.] Moreover, the court instructed the jury with CALCRIM No. 220, which defines the reasonable doubt standard and reiterates that the defendant is presumed innocent; it also explains that only proof beyond a reasonable doubt will overcome that presumption." (*Villatoro, supra*, 54 Cal.4th at pp. 1167–1168, italics added.)

Unlike *Villatoro*, the jury instruction in this case did not require the charged offenses be proved beyond a reasonable doubt in order to be used to prove propensity. Instead, the instruction, after defining "any such other sexual offense" to include both charged and uncharged crimes, instructed the jury that "[i]f you find by a *preponderance of the evidence* that the defendant committed *any such other sexual offense*, you may[,] but are not required to [,] infer that the defendant had a disposition to commit sexual offenses."

This instruction explicitly told the jury that they need only find a charged offense had been committed by a preponderance of the evidence in order for them to use that charged offense to show a propensity to commit other charged offenses. This impermissibly lessened the People's burden of proof on their consideration and use of material evidence. Although the jury was ultimately instructed that defendant's guilt needed to be proved beyond a reasonable doubt, this separate admonition is insufficient to overcome the direct instruction to the jury that they need only find a charged offense had been committed by a preponderance of the evidence in order for them to use that charged offense to show a propensity to commit other charged

7

offenses.

We conclude CALJIC No. 2.50.01 violates the holding of *Villatoro* and the trial court erred by instructing the jury it could find defendant committed the charged offenses by a preponderance of the evidence for propensity purposes.

*IV. The Instructional Error Was Harmless Beyond a Reasonable Doubt.*

Having concluded the trial court erred by instructing the jury it could find defendant committed the charged offenses by a preponderance of the evidence for propensity purposes, we must determine whether the error was prejudicial. Both defendant and the People agree that, because the erroneous instruction lessoned the prosecution's burden of proof below the constitutionally required reasonable doubt standard, and therefore violated his federal due process right to proof beyond a reasonable doubt of each element of the charged offenses, a *Chapman* standard of review is required. (*People v. James* (2000) 81 Cal.App.4th 1343, 1360.) We agree. This requires a careful review of the trial record to determine whether the People have shown "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman, supra*, 386 U.S. at p. 24).

Based on our review of the record, we conclude the *Chapman* standard has been met in this case. Here, four different young women testified they had been sexually abused by defendant and, if credible, their claims were sufficient to establish the elements of the charged offenses beyond a reasonable doubt. By their verdict, we can infer the jury found each of the young girls' testimony credible. (See *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction"].) As a reviewing court, we cannot substitute this Court's evaluation of witnesses' credibility for that of the fact finder. (*People v. Barnes* (1986) 42 Cal.3d 284, 304.) As the jury's verdict represents a clear acceptance of the young women's testimony, we conclude the People have shown beyond a reasonable doubt that the instructional error did not contribute to the verdict obtained.

Juarez, 2016 WL 1128492, at *2–4.

b. Legal Standard

Initially, the Court notes that a claim that a jury instruction violated state law is not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle, 502 U.S. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. See Estelle, 502 U.S.

8

at 72.  In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)); Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988); see, e.g., Middleton v. McNeil, 541 U.S. 433, 434–35 (2004) (per curiam) (no reasonable likelihood that jury misled by single contrary instruction on imperfect self-defense defining "imminent peril" where three other instructions correctly stated the law).

In addition, a habeas petitioner is not entitled to relief unless the instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice."  Id. (citation omitted); see Calderon v. Coleman, 525 U.S. 141, 146–47 (1998).

      c.  Analysis

As set forth above, the Fifth DCA concluded that the instruction was erroneous and lessened the prosecution's burden of proof.  Even so, the instruction was not constitutionally infirm.  Regardless of the instruction's reference to the preponderance of evidence standard, the jury was informed in the same instruction, as follows:

> However, even though you find by a preponderance of the evidence that the defendant committed [other] sexual offense[s], *that is not sufficient by itself to prove beyond a reasonable doubt that [he] committed the charged crime[s] you are determining*.  If you determine an inference properly can be drawn from this evidence, *this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime[s] that you are determining*.

(Doc. 7-1 at 230) (emphasis added).

This additional language clarified that the jury still had to determine the petitioner's guilt beyond a reasonable doubt as to each charged offense.  In addition, the jury was further instructed that "Each Count charge[s] a distinct crime," and that it "must decide each Count separately." (Doc. 7-1 at 257.)  Therefore, the jury instruction did not violate the Constitution.  See Schultz v. Tilton, 659 F.3d 941, 945 (9th Cir. 2011) (CALJIC 2.50.01 did not lower the burden of proof in

9

violation of the Constitution where jury was advised that regardless of the preponderance of the evidence proof of other crimes, the charged crime must still be proved beyond a reasonable doubt).

In addition, the state court reasonably determined that the error was harmless. As noted by the state court, the evidence against Petitioner was overwhelming. Four different girls testified to continuous sexual abuse by Petitioner. By their verdict, the jury found each victim credible. Since their testimony established each element of the charged crimes, Petitioner cannot show that he was prejudiced by the instruction as given. A fairminded jurist could conclude that the state court determination of harmless error was objectively reasonable. The claim should be denied.

2. Insufficiency of the Evidence

Petitioner next claims that the evidence was insufficient to support his convictions.

a. State Court Decision

Petitioner presented this claim on habeas review to the Kern County Superior Court and the California Supreme Court. In the last reasoned decision, the state superior court rejected the claim as follows:

> The court finds no merit in Petitioner's contentions and denies the petition for writ of habeas corpus. The sexual abuse alleged involved three children: Isis B. aged seven; Laylah F. age five; and Alexis L. age eleven. This abuse occurred over a five year period from 2006 to 2011 and involved digital penetration, forced oral copulation, masturbation in front of one of the victims including ejaculating on the buttocks of one of the victims; and fondling the breast of one of the victims. The digital penetration on two of the victims involved the vagina and breasts or as one of the victims portrayed, "touching private area." This information was borne out through police interviews pretext telephone calls, along with interviews with a forensic social worker, Leslie Foster.
>
> The investigation began on or about November 27, 2012, when the children reported the inappropriate sexual contact by Petitioner to the Henderson Nevada police department and culminated in Petitioner's arrest on May 29, 2013.
>
> A. SUFFICIENCY OF EVIDENCE
>
> At the outset, sufficiency of the evidence claims are not cognizable in habeas corpus unless the newly discovered evidence fundamentally undermines the conviction. *In re Lindley* (1947) 29 Cal.2d 709, 723. There is no newly discovered evidence which fundamentally undermines the prosecution's case.
>
> Here, the evidence of Petitioner's guilt is overwhelming. The continuous abuse of Isis B. occurred from 2006 through 2011. The three incidents occurred when Isis was seven years old, ten years old, and eleven years old. They occurred while Isis

and her sister Forest visited Maria Martinez's ranch outside Wasco, California on summer and winter vacations.

Petitioner took advantage of opportunities to engage in sexual misconduct with Isis B. when Maria Martinez, the grandmother, was outside the house, or outside the pickup truck. Laylah F. was five years old when she was asked to come over to Petitioner. Petitioner fondled Laylah's breast and vagina. When she tried to cry out, Petitioner put his hands over her mouth stating "shhh." The sexual misconduct against Alexis Lopez occurred in 2009, when she was at the house of Maria Martinez. Petitioner fondled the breast of Alexis L. under the pretext of wiping a hair from her face and to see what video game she was playing.

When her father heard about the incident, he picked up the little girl from the premises and drove her to her mother's house. The victims' parents were unaware of these incidents until Alexis L. and Isis B. brought it to their attention. When previously asked about the incidents in 2010, Isis B. denied them because she feared retaliation by Petitioner since he was bigger than her. Isis B. revealed the extent of these actions in text telephone calls to her mother the day after Thanksgiving in 2012.

The husband almost had an altercation with Petitioner but was held back by family members. Both Petitioner and Martinez fled to California in a truck shortly thereafter. This evidence is borne out by the preliminary hearing testimony of Officer Mark Barnes *et al*. Although there are no trial transcripts in the file, it is assumed that the three victims testified as to what occurred. Their testimony is also borne out by interviews with Lesley Fisher along with law enforcement contacts and pretext telephone calls.

(Doc. 7-10 at 1-2.)

b. <u>Legal Standard</u>

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in <u>Jackson v. Virginia</u>, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319; <u>see also</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. <u>Jackson</u>, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. <u>Id</u>. at 324, n. 16.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Id</u>. at 326.

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In applying the AEDPA's deferential standard of review, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).

In Cavazos v. Smith, 565 U.S. 1 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson

> makes clear that it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Id. at 2.

    c.   Analysis

The state court determination that sufficient evidence supported the guilty findings was reasonable. The superior court noted that the evidence against Petitioner was overwhelming. Victim Isis B. testified that Petitioner abused her repeatedly from 2006 through 2011. She testified that Petitioner would touch her breasts and vagina and would force her to touch his penis while at the same time he touched her genitals. Laylah F. testified that Petitioner fondled her breast and vagina. Alexis L. testified that Petitioner approached her from behind and fondled her breasts. Petitioner disputes their testimony and asks the Court to believe his version of events instead, but on habeas review, the Court is not entitled "to reweigh the evidence and view it in the light most favorable to the defense." Jackson, 443 U.S. at 319. Accordingly, Petitioner fails to demonstrate that the state court rejection of his claim was an unreasonable application of

Supreme Court authority. The claim should be denied.

### 3. Ineffective Assistance of Counsel

Petitioner next claims that defense counsel rendered ineffective assistance by failing to investigate the facts of the case and by failing to prepare for impeachment of knowingly false testimony.

#### a. State Court Decision

This claim was also presented by habeas petition to the state courts. In the last reasoned decision, the Kern County Superior Court rejected the claim, as follows:

> Lastly, Petitioner's allegations that the three minor children gave false testimony are not supported by the evidence, and are conclusory without any factual foundation. *People v. Duvall* (1995) 9 Cal.4th 464, 474. Aside from this blanket statement, Petitioner fails to state what evidence was false and why. Based upon the above-mentioned reasons, the court finds sufficient evidence to sustain the convictions, Petitioner fails to show he is innocent of these crimes, and there is no ineffective assistance of counsel.
>
> To demonstrate ineffective assistance of counsel, Petitioner must demonstrate that but-for counsel's conduct; he would have been acquitted or received a lighter sentence. *Strickland v. Washington* (1984) 466 US. 668, 694. He fails to carry this high burden of proof. Since the court declines to issue an order to show cause, the motion for appointment of counsel is denied. *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1258, 1291. Petitioner is entitled to adequate, not perfect counsel. *People v. Jackson* (2009) 45 Cal.4th 1062, *People v. Smith* (1993) 6 Cal.4th 684, 696. Counsel did the best she could under extremely difficult circumstances in the fact of overwhelming evidence of Petitioner's complicity.

(Doc. 7-10 at 4.)

#### b. Legal Standard

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's

deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

As to all of the claimed instances of ineffective assistance, the state court applied the correct federal standard, i.e., Strickland, to Petitioner's contentions regarding counsel's performance. Hence, the only question is whether, having applied the correct test, the state court's application of Strickland was objectively unreasonable. Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

    c. Analysis

As found by the appellate court, Petitioner's claim fails because his arguments are entirely conclusory. Petitioner faults counsel for failing to investigate and for failing to prepare for the

impeachment of testimony, but he offers nothing in support of his arguments. He does not state what counsel could have uncovered had she investigated further. He does not state what parts of the victims' testimony were false and why, and he does not allege how counsel could have shown it to be false. The claim is completely speculative. James v. Borg, 24 F.3d 20, 26 (9th Cir.1994). Therefore, Petitioner fails to show how counsel was ineffective, and he fails to demonstrate any prejudice resulting therefrom.

**IV.    ORDER**

It is hereby ORDERED that the Clerk of Court is DIRECTED to randomly assign a District Judge to this case.

**V.    RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten court days after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 31, 2017**          /s/ Jennifer L. Thurston
                                   UNITED STATES MAGISTRATE JUDGE